UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITTRACK INC., a Canadian Corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>HYPERZOO TECHNOLOGY LTD., a UK entity; SHENZHEN DINGKA TECHNOLOGY, LTD., a Chinese entity; KENNETH and TERESA BRANCH, individuals residing in Virginia; GOLDEN TULIP, LLC, a Wyoming limited liability company; and DOES 1–25,<br><br>                                    Defendants. | Case No.: 23-CV-536 TWR (NLS)<br><br>**ORDER:**<br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER, AND SERVICE OF PROCESS BY EMAIL AND PUBLICATION;**<br><br>**(2) SETTING HEARING AND BRIEFING SCHEDULE ON MOTION FOR PRELIMINARY INJUNCTION;**<br><br>**(3) ORDERING PLAINTIFF TO SHOW CAUSE WHY VENUE IS PROPER**<br><br>(ECF No. 6) |

Presently before the Court is Plaintiff's *Ex Parte* Motion for Entry of (1) Temporary Restraining Order, (2) Asset Restraining Order, (3) Expedited Discovery Order, and (4)

Service of Process by Email and Publication. (ECF No. 6, "Mot.")  For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order and Asset Restraining Order, **DENIES** the Motion for an Expedited Discovery Order, and **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** Plaintiff's Motion for Service of Process by Email and Publication.

## BACKGROUND

Plaintiff FitTrack, Inc. initiated this action on March 27, 2023, (*see* ECF No. 1, "Compl."), and filed the instant Motion the next day, (*see* Mot.).  Plaintiff is a Canadian corporation that "manufactures, markets, and sells a high-end scale called the FitTrack Dara Smart DMI Digital Scale (the 'Dara')." (Compl. at 1, 4.)  Plaintiff registered the "FitTrack" trademark with the United States Patent and Trademark Office on December 10, 2019. (*See id*. at 4, 5.)  Since then, Plaintiff has used its "FitTrack" trademark to market the Dara scale, spending over $14,550,000 on advertising and selling over 1.7 million units. (*Id*. at 5.)

Plaintiff only sells the Dara scale through its website and Amazon webstore and does not sell the product to any third-party distributors or re-sellers. (*Id*.)  In conjunction with the Dara scale, Plaintiff developed a mobile application that uses Bluetooth technology to connect to the scale and provide users with body composition metrics. (*See id*. at 4.)  "The [Plaintiff's] software will not allow the application to connect with a scale bearing an unrecognizable serial number." (*Id*.)  This means users who purchase counterfeit Dara scales are unable to access Plaintiff's mobile application service. (*Id*.)

Defendants each own and operate different Amazon webstores. (*Id*. at 1–2.)  Through these webstores, Defendants allegedly target and sell products to consumers in the United States, including the State of California and the Southern District of California. (*Id*. at 2.)  On information and belief, Plaintiff claims: (1) Defendant Hyperzoo Technology Ltd. is an entity organized under the laws of the United Kingdom, (*id*. at 1); (2) Defendant ShenZhen DingKa Technology Co., Ltd. is an entity organized under the laws of China, (*id*. at 2); (3) Defendants Kenneth and Teresa Branch are individuals residing in Virginia,

(*id.*); and (4) Defendant Golden Tulip LLC is a Wyoming limited liability company, (*id.*). Plaintiff's Complaint also includes twenty-five Doe Defendants who operate Amazon webstores and other e-commerce platforms. (*Id.*)

Plaintiff alleges these Defendants are an "interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products that infringe on Plaintiff's intellectual property rights." (*Id.* at 3.) Plaintiff claims that Defendants traffic in counterfeits of Plaintiff's Dara scale and unfairly use Plaintiff's "FitTrack" trademark in connection with the marketing, promotion, and sale of these counterfeit products. (*Id.* at 2.)

According to Plaintiff, Defendants' actions have injured consumer perceptions of Plaintiff's brand quality and reputation, "causing the brand to suffer damage to its goodwill and lost sales." (*Id.* at 9.) Plaintiff claims "Amazon customers do not realize they have purchased a counterfeit scale which cannot connect to Plaintiff's mobile application. As a result, Amazon customers attribute the issue towards the FitTrack brand as opposed to the sellers offering counterfeit products." (*Id.*) "In addition to selling counterfeit products," Plaintiff argues, Defendants "do not comply with Plaintiff's customer service requirements or quality controls." (*Id.* at 11.) Plaintiff claims Defendants' actions not only cause "significant monetary harm" but also "irreparable harm to [Plaintiff's] reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity." (*Id.* at 12.)

As a result, Plaintiff brings six causes of action: (1) trademark infringement under 15 U.S.C. §§ 1114 and 1125(a); (2) trademark dilution under 15 U.S.C. § 1125(c); (3) unfair competition and false advertising under 15 U.S.C. § 1125(a); (4) unfair competition and false advertising under California Business and Professions Code §§ 17200 and 17500, *et. seq.*; (5) contributory trademark infringement under federal law and California common law; and (6) vicarious trademark infringement under federal law and California common law. (*See generally id.*) Plaintiff has also filed the instant *Ex Parte* Motion. (*See* Mot.)
/ / /

**PLAINTIFF'S MOTION**

Plaintiff's *Ex Parte* Motions seeks (1) a temporary restraining order, (2) asset restraining order, (3) expedited discovery, and (4) leave to effect service by email and publication. (*See generally* Mot.) The Court addresses each issue in turn.

## I. Temporary Restraining Order and Asset Restraining Order

First, Plaintiff seeks a temporary restraining order and an order preventing the fraudulent transfer of assets. (*See* Mot. at 4–8.) Specifically, "Plaintiff requests an order requiring the Defendants to immediately cease all infringement of Plaintiff's trademark, including on or in connection with the sale of counterfeit/infringing products on or in connection with all of Defendants' websites, webstores, or listings." (*Id.* at 7.) To obtain a temporary restraining order, plaintiffs "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (first citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); and then citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12 (1982)).

Additionally, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorneys,"—meaning, *ex parte*—"only if . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). "The stringent restrictions imposed . . . by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974) (footnote omitted).

Consistent with the Supreme Court's concern, the Ninth Circuit has recognized "very few circumstances" which justify the issuance of a temporary restraining order *ex*

*parte*. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1226, 1131 (9th Cir. 2006). To justify an *ex parte* order, the movant must demonstrate that notice to the adverse party (1) would be impossible "because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing" or (2) would "render fruitless further prosecution of the action" because the adverse party would likely destroy evidence. *Id.* (citation omitted); *see also Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1094 (N.D. Cal. 2012). In trademark infringement actions with identifiable defendants, an *ex parte* order is only justified if the plaintiff demonstrates "that defendants would have disregarded a direct court order and disposed of the [infringing] goods within the time it would take for a hearing" and supports "such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.* (first citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993); and then citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4–5 (2d Cir. 1979)); *see also Rovio*, 907 F. Supp. 2d at 1094.

In accordance with Federal Rule of Civil Procedure 65(b), this District's Civil Local Rules require all *ex parte* motions to be accompanied by an "affidavit or declaration" certifying that notice has been provided to the opposing party or explaining why such notice could not or should not be provided. S.D. Cal. Civ. L.R. 83.3(g)(2). Here, Plaintiff has not submitted an affidavit or declaration that "certifie[s] in writing any efforts made to give notice" and "reasons why [notice] should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Furthermore, the Motion itself does not describe any attempts to provide notice or any reasons why notice would render this action fruitless. (*See generally* Mot.) The closest the Motion comes to addressing these issues is Plaintiff's claim stating:

> Defendants employ certain tactics to conceal their identities. These efforts make it virtually impossible for Plaintiff to learn Defendants' true identities. These kinds of Defendants, namely those that fence counterfeit goods online, use judicial notice to abscond with their ill-gotten profits beyond the effective reach of rights owners seeking to enforce their rights.

(Mot. at 4; *accord id.* at 9 ("Plaintiff is currently unaware of both the true identities and locations of the Defendants.").)  Despite these conclusory statements, the Complaint indicates that Plaintiff has been able to discern several of the Defendants' individual and corporate identities.  (*See* Compl. at 1–2.)  Plaintiff has not presented any evidence that Defendants' known identities are false or that these Defendants cannot be located.  (*See generally* Mot.)  In fact, Plaintiff asserts that "providing notice via e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections."  (Mot. at 9.)  Therefore, notice to the named Defendants is not impossible.

Additionally, Plaintiff's sweeping assertion that those who sell counterfeit goods online are the kind of defendants who abscond does not bring this action into the "very narrow band of cases in which ex parte orders are proper."  *Reno Air Racing Ass'n*, 452 F.3d at 1131.  As the Ninth Circuit put it, "[w]ere a single conclusory statement . . . about infringers sufficient to meet the dictates of Rule 65, then ex parte orders without notice would be the norm and this practice would essentially gut Rule 65's notice requirements."  *Id.*  In sum, Plaintiff has failed to demonstrate why notice would render this action fruitless.  Accordingly, the Court **DENIES WITHOUT PREJUDICE** the *Ex Parte* Motion for a Temporary Restraining Order and Asset Restraining Order.

## II. Hearing and Briefing Schedule on Motion for Preliminary Injunction

Because Plaintiff's failure to comply with the *ex parte* motion requirements of Rule 65 precludes a finding in its favor at this time, the Court declines to consider whether (1) Plaintiff is likely to succeed on the merits, (2) Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) equity favors Plaintiff, and (4) a preliminary injunction is in the public interest.  *See Winter*, 555 U.S. at 20.  The Court will, however, consider Plaintiff's Motion on the merits after Defendants have been provided proper notice and an opportunity to respond.  The same four-part *Winter* test applies to both temporary restraining orders and preliminary injunctions.  *See Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Accordingly, the Court will

take Plaintiff's Motion for a Temporary Restraining Order and Asset Restraining Order under consideration as a Motion for Preliminary Injunction.

In light of the time-sensitive nature of preliminary injunctive relief, the Court expedites the standard briefing schedule set forth in Section III.B.2 of the undersigned's Standing Order for Civil Cases and sets the following briefing schedule. The Court **SETS** Plaintiff's Motion for Preliminary Injunctive Relief (ECF No. 6) for a hearing on Thursday, April 27, 2023, at 2:00 p.m. in Courtroom 3A. Plaintiff **MAY FILE** any supplemental briefing in support of its Motion on or before April 6, 2023. Defendants **MAY FILE** any opposition to the Motion on or before April 20, 2023,[1] and Plaintiff **MAY FILE** an optional reply on or before April 25, 2023. As noted in Section III.A.2 of the undersigned's Standing Order for Civil Cases, so long as they receive notice and the opportunity to respond, "[a]n opposing party's failure timely to file an opposition to any motion may be construed as consent to the granting of the motion pursuant to Civil Local Rule 7.1(f)(3)(c)."

**III.   Expedited Discovery**

Next, Plaintiff seeks "an *ex parte* Order allowing expedited discovery to discover bank and payment system accounts Defendants use for their infringing sales operations." (Mot. at 8.) Plaintiff claims that without the ability "to discover Defendants' bank and payment system accounts, any asset restraint [order] would be of limited value because Plaintiff would not know the entities upon whom to serve the order." (*Id.*) Because the Court has denied Plaintiff's request for a Temporary Restraining Order and Asset Restraining Order, the Court also **DENIES WITHOUT PREJUDICE** the request for expedited discovery.

---

[1] The Court will consider any opposition to the Motion for a Preliminary Injunction without prejudice to Defendants' ability to assert Defenses under Federal Rule of Civil Procedure 12(b) following proper service of the Complaint and Summons as required by Section IV of this Order.

Under Federal Rule of Civil Procedure 26, absent a court order, discovery is generally not permitted until the parties have conferred pursuant to Rule 26(f). Fed. R. Civ. P. 26(d)(1). Still, the Court may grant a request for expedited discovery upon a showing of good cause. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002) (applying "the conventional standard of good cause in evaluating Plaintiff's request for expedited discovery"). An order permitting early discovery is only appropriate "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276. In determining whether good cause exists to justify this discovery, courts look at the following factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [party opposing expedited discovery] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *NobelBiz, Inc. v. Wesson*, No. 14CV0832-W (JLB), 2014 WL 1588715, at *1 (S.D. Cal. Apr. 18, 2014) (citing *Apple Inc. v. Samsung Elecs. Co.*, No. 11cv1846-LHK, 2011 WL 1938154, at *1 (N.D. Cal. 2011)).

Here, these factors do not weigh in favor of expedited discovery of "Defendants' bank and payment account systems" at this time. The Courts denial of the Temporary Restraining Order and Asset Restraining Order also eliminates the primary purpose for which Plaintiff seeks expedited discovery, namely, to identify Defendants' financial accounts so that Plaintiff may effectuate the asset restraint. (*See id.*) Furthermore, the discovery Plaintiff seeks is very broad. Plaintiff seeks Defendants' financial and bank account information without limitation to only financial records associated with the allegedly infringing products and without regard to what other businesses Defendants may be properly engaged in. Thus, Plaintiff has not demonstrated that the discovery sought is tailored and proportional, especially given the early stage of this action. In light of the foregoing, Plaintiff has failed to show good cause, and the Court **DENIES WITHOUT PREJUDICE** Plaintiff's *Ex Parte* Motion for Expedited Discovery.

///

## IV. Service of Process by Email and Publication

Finally, Plaintiff seeks permission to effect service of process by "electronically sending the Complaint, this Order, and other relevant documents via Defendants' Webstore registration emails, any known or discovered e-mail related to the webstore[s] listed in the Complaint, and by publishing documents on a publicly available website." (Mot. at 9.) Plaintiff argues that this alternative method of service is "appropriate and necessary" because Defendants, on information and belief, "(1) have not provided names and physical addresses in the public contact information to their respective Webstores; and (2) rely primarily on electronic communications to communicate with customers, demonstrating the reliability of this method of communication by which Defendant[s] may be apprised of the pendency of this action." (*Id.*)

Plaintiff has identified five named Defendants: Hyperzoo Technology Ltd.; ShenZhen DingKa Technology Co., Ltd.; Kenneth Branch; Teresa Branch; and Golden Tulip LLC. (*See* Compl. at 1–2.) Two of the Defendants are individuals residing within the United States, one is a company within the United States, and two are foreign companies. (*See id*.) Federal Rules of Civil Procedure 4(e) and 4(h)(1) govern service of individuals and companies within the United States. Both can be served according to state law or by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1). Alternatively, a U.S. based company can be served by delivering a copy of the summons and complaint to an officer or agent designated by law to receive service and mailing a copy to the defendant. *See* Fed. R. Civ. P. 4(h)(1)(B).

Federal Rules of Civil Procedure 4(f) and 4(h)(2) govern service of foreign companies. Under those rules, service may be effected: (1) by a method prescribed in an international agreement; (2) if none applies, by a method "reasonably calculated to give

notice," namely, (a) a method prescribed by foreign law, (b) a method directed by foreign authority, or (c) mail from the clerk of court requiring a signed receipt; or alternatively, (3) "by other means not prohibited by international agreement, as the court orders." *See* Fed. R. Civ. P. 4(f). It is under this final prong of Rule 4(f) that Plaintiff seeks permission to serve all Defendants—not just those in foreign jurisdictions—using email and publication on a public website. (*See* Mot. at 9–10.)

Although Rule 4(f) does not apply to defendants within the United States, Rule 4(e) permits service upon U.S. residents in accordance with California law. *See* Fed. R. Civ. P. 4(e)(1). California provides for substitute service by publication, Cal. Code Civ. Proc. § 415.50, or "a manner which is reasonably calculated to give actual notice to the party to be served," Cal. Code Civ. Proc. § 413.30. The Due Process Clause of the Constitution also requires that service be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016–17 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

It is within the sound discretion of the district court to determine "when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" or state law. *See Rio Props., Inc.*, 284 F. 3d at 1116. In *Rio*, for example, the Court found service by email proper after the plaintiff unsuccessfully attempted to serve a foreign defendant at its claimed U.S. address, through its attorney for the matter, and then in its home country by hiring a private investigator. *See id.*; *see also Aevoe Corp. v. Pace*, No. C11-3215MEJ, 2011 WL 3904133, at *2 (N.D. Cal. Sept. 6, 2011) (requiring "reasonable and diligent attempts to serve [defendant] by both personal and substitute service" before allowing service by email and publication). Here, by contrast, Plaintiff has not presented any evidence that it attempted to locate and serve Defendants by traditional means and was unable to do so. (*See generally* Mot.) The Court acknowledges, however, that the time-sensitive nature of Plaintiff's request for a preliminary injunction renders it

///

challenging to use traditional means of service to provide Defendants with timely notice of Plaintiff's Motion before the hearing date.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART WITHOUT PREJUDICE** Plaintiff's Motion to electronically serve Defendants via email and website publication. At this time, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request to electronically serve the Complaint and Summons. Plaintiff **SHALL SERVE** the Complaint and Summons as prescribed by Rule 4. If after a good faith effort Plaintiff remains unable to locate certain Defendants' physical addresses and effect service by traditional means, Plaintiff may refile its motion to serve those Defendants by an alternative method. Nonetheless, given the unusual procedural posture of this case, the Court **GRANTS** Plaintiff's request to electronically serve filings related to this Motion and Order. Plaintiff **SHALL SERVE** (1) its Motion (ECF No. 6); (2) this Order; and (3) any supplemental briefing on the Motion upon Defendants via email and website publication.[2] Plaintiff **SHALL FILE PROOF OF SERVICE** of these materials <u>on or before April 10, 2023</u>, and its reply brief, if any, <u>on or before April 27, 2023</u>.

## ORDER TO SHOW CAUSE

Finally, the Court addresses the issue of venue. Improper venue may be raised by a court *sua sponte* where a responsive pleading has not yet been filed and the time for doing so has not run. *See Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986). "The district court of a district in which . . . venue [is] in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Relevantly, under 28 U.S.C. § 1391 a civil action may be brought in:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[2] Additionally, Plaintiff must email Defendants a courtesy copy of the Complaint; however, this is not a substitute for formal service of the Complaint and Summons as required by the Court under Rule 4.

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. 1391(b)(2) & (3).

Under 28 U.S.C. 1391(b)(2), venue is only proper in this District Court if a substantial part of the events giving rise to the claim occurred here or a substantial part of the counterfeit property is located here. *See* 28 U.S.C. 1391(b)(2). Here, Plaintiff is a Canadian Corporation. (*See* Compl. at 1.) Defendant Hyperzoo Technology Ltd. is a United Kingdom company, ShenZhen DingKa Technology Co., Ltd. is a Chinese company, Kenneth Branch and Teresa Branch are Virginia residents, and Golden Tulip LLC is a Wyoming company. (*See id*. at 1–2.) Thus, the Parties' connection to the Southern District of California is not immediately apparent.

Still, Plaintiff alleges that venue is proper in this District because "the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district" and "Defendants have caused tortious injury to Plaintiff in this judicial district." (Compl. at 3.) Plaintiff's assertions mirror the venue requirements of 28 U.S.C. 1391(b)(2). Yet, it is not apparent from the face of the Complaint how a *substantial* portion of the alleged wrongdoing or harm occurred in the Southern District of California. Defendants are e-commerce retailers who allegedly "sell counterfeit products to consumers within the United States," not just in California or the Southern District of California. (Compl. at 2.)

If there is no district in which a substantial part of the claims occurred or a substantial part of the counterfeit property is located, venue will be proper in any district in which any defendant is subject to the court's personal jurisdiction. *See* 28 U.S.C. 1391(b)(3). Plaintiff alleges that venue is proper in this District because "Defendants have extensive contacts with, and conduct business within, the State of California and this judicial district" and "Defendants have caused Plaintiff's products to be advertised, promoted, and sold in this judicial district." (Compl. at 3.) These assertions mirror the venue requirements of 28 U.S.C. 1391(b)(3), which requires specific personal jurisdiction where general personal jurisdiction over the defendants is unavailable.

Yet, specific personal jurisdiction requires "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Ninth Circuit applies a three-part test to assess whether a non-resident defendant has sufficient contacts to be subject to a state's personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

"The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). Under the first prong of the Ninth Circuit's test, courts are to "apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). "The latter test applies here given the nature of the underlying claims." *Id.* "Purposeful direction 'requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 803).

Here, the Complaint fails to explain how Defendants purposefully directed advertising or sales toward California or the Southern District of California or how

Plaintiffs' claims arise out of Defendants' contacts with this forum.  Accordingly, the Court **ORDERS** Plaintiff **TO SHOW CAUSE** within fourteen (14) days of the electronic docketing of this Order why this action should not be dismissed or transferred for improper venue.  Defendants **MAY**, but are not required to, **FILE** a response within twenty-one (21) days of the electronic docketing of this Order.

## CONCLUSION

For the reasons set forth above, the Court:

(1) **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for a Temporary Restraining Order and Asset Restraining Order;

(2) **SETS** Plaintiff's Motion for a Temporary Restraining Order and Asset Restraining Order for a hearing on Thursday, April 27, 2023, at 2:00 p.m. in Courtroom 3A;

(3) **DENIES WITHOUT PREJUDCE** Plaintiff's Motion for Expedited Discovery;

(4) **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Electronically Serve the Complaint and Summons;

(5) **GRANTS** Plaintiff's Motion to Electronically Serve its Motion, this Order, and any further briefing related to this Motion; and

(6) **ORDERS PLAINTIFF TO SHOW CAUSE** within fourteen (14) days of the electronic docketing of this Order why this Action should not be dismissed for improper venue.  Defendants **MAY FILE** a response within twenty-one (21) days of the electronic docketing of this Order.

It is further **ORDERED** that:

(7) Plaintiff **MAY FILE** any supplemental briefing in support of its Motion on or before April 6, 2023;

(8) Plaintiff **SHALL SERVE** (1) its Motion (ECF No. 6); (2) this Order; and (3) any supplemental briefing upon Defendants via email and website publication on or before April 6, 2023.  Plaintiff **SHALL FILE PROOF OF SERVICE**

of (1) its Motion (ECF No. 6); (2) this Order; and (3) its supplemental briefing, if any, on or before April 10, 2023;

(9) Defendants **MAY FILE** any opposition to the Motion on or before April 20, 2023; and

(10) Plaintiff **MAY FILE** an optional reply on or before April 25, 2023. Plaintiff **SHALL FILE PROOF OF SERVICE** of its reply brief, if any, on or before April 27, 2023.

**IT IS SO ORDERED.**

Dated: March 29, 2023

_____
Honorable Todd W. Robinson
United States District Judge